1
2
3
4
5                    IN THE UNITED STATES DISTRICT COURT
6                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8

9  | IN RE: TFT-LCD (FLAT PANEL) ANTITRUST | No. M 07-1827 SI |
10 | LITIGATION | MDL. No. 1827 |

_____/

11
12 This Order Relates to:

**ORDER GRANTING IN PART AND
DENYING IN PART PARTIES'
MOTIONS TO EXCLUDE EXPERT
TESTIMONY**

13 *Best Buy v. AU Optronics Corp. et al,*
Case No. 10-CV-4572,

14 *Best Buy v. Toshiba Corp. et al*
Case No. 12-CV-4114

15
16 *Costco Wholesale Corporation v. AU Optronics
Corp. et al.*, Case No. 11-CV-00058

17 *Electrograph Systems, Inc. v. Epson Imaging
Devices Corp. et al.*, Case No. 10-CV-00117

18
19 *Eastman Kodak Company v. Epson Imaging
Devices Corp. et al.,* Case No. 10-CV-5452

20 *Motorola Mobility Inc. v. AU Optronics Corp. et
al.,* Case No. 09-CV-5840

21
22 *Target Corp, et. al.,* v. *AU Optronics Corp. et al.,*
Case No. 10-CV-4945

23

24 _____/

25         The parties' motions to exclude expert testimony were scheduled for a hearing on June 12, 2013.

26 Pursuant to Civil Local Rule 7-1(b), the Court determined that these matters were appropriate for

27 resolution without oral argument, and VACATED the hearing on these motions.  For the reasons set

28 forth below, the motions are GRANTED in part and DENIED in part.  Docket Nos. 7842, 7844, 7847,

**United States District Court**
For the Northern District of California

7850, 7852, 7853, and 7854.

**1.      Defendants' motion to exclude testimony of B. Douglas Bernheim and Adam K. Fontecchio**

Defendants seek to exclude testimony by Plaintiffs' expert Adam K. Fontecchio concerning the manufacturing of semiconductor microprocessors and the Microprocessor Producer Price Index ("MPPI"); and testimony by Plaintiffs' expert B. Douglas Bernheim that relies on the MPPI to estimate the "but-for" prices of LCD panels or products.  Docket Nos. 7842 and 7852.  Defendants challenge Dr. Fontecchio's qualifications in the area of microprocessors and argue that (1) he was not qualified to testify in his initial report that sufficient similarities exist "between LCD panel manufacturing and the manufacturing of semiconductor microprocessors . . ." to properly analogize the two; and (2) the opinion in his rebuttal report that the MPPI was a good proxy for LCD manufacturing costs went beyond his expertise.  They further argue that Dr. Bernheim relied solely on Dr. Fontecchio's opinion as justification for using the MPPI to estimate "but-for" costs, and because of Dr. Fontecchio's lack of qualification, Dr. Bernheim's reliance on the MPPI was not based on a scientifically valid method.

The Court first concludes that Dr. Fontecchio's expertise in the field of microprocessors qualifies him to offer an opinion on the similarities between the manufacturing of microprocessors and the manufacturing of LCD panels.  That Dr. Fontecchio doesn't frequent factories, or work in one, does not render him unqualified to offer an opinion on the manufacturing of microprocessors.  Moreover, in responding to Defendants' experts' arguments regarding the suitability of alternative price indices, Dr. Fontecchio was within his expertise in opining that the MPPI was a suitable proxy for LCD panel manufacturing costs.  Based on this conclusion, the Court finds that Dr. Bernheim's reliance, whether in part or whole, on Dr. Fontecchio's opinion provided a sound basis for selecting the MPPI in his damage analysis.  To the extent that Defendants question the use of the MPPI as opposed to other variables, this can be the subject of cross-examination, but it does not render the experts' models unreliable.   Accordingly, Defendants' motions are DENIED.  Docket Nos. 7842 and 7852.

**2.      Defendants' motion to exclude B. Douglas Bernheim**

Defendants seek to exclude certain testimony of Plaintiffs' damages expert Dr. B. Douglas

United States District Court

For the Northern District of California

2

United States District Court
For the Northern District of California

1    Bernheim.  Docket Nos. 7844 and 7854.  Defendants make three primary arguments: (1) Dr. Bernheim

2    was unqualified to give generalized opinions about "Asian business practices" that are highly

3    prejudicial, (2) he improperly speculated on undiscovered evidence that might exist outside the record

4    ("tip of the iceberg"), and (3) in testifying about "typical" cartel overcharges, he relied on a study with

5    methodological flaws, and neither the study nor Dr. Bernheim provides a basis for evaluating whether

6    the cartel alleged in this case was "typical."

7           With respect to Defendants' first argument, the Court concludes that Dr. Bernheim's testimony

8    regarding ownership structure, corporate governance practices, and controlling owner incentives of

9    Asian companies may be presented at trial.  This specific testimony that Defendants seek to exclude

10   involves Dr. Bernheim's response to defense experts' opinions regarding profitability and investment

11   behavior of Defendant companies, and his attempt to challenge the validity of defense experts' premise

12   that these companies act "to maximize shareholder value (profits) and were beholden to the external

13   capital markets."  *See* Docket No. 7844-2 at ¶ 393.  In this regard, Dr. Bernheim is not offering

14   "generalized opinions about purported behavior of Asian businesses" unsupported by evidence.  To the

15   contrary, Dr. Bernheim's opinions about the corporate organizational structures and governance

16   practices of Asian companies are based on his review of academic literature addressing these topics and

17   are specific responses to defense experts' assumptions concerning Defendants' motives and business

18   conduct.[1]  The Court is cognizant of the risk of the prejudicial effect of cultural stereotyping and weighs

19   carefully the risk of prejudice with the probative value of Dr. Bernheim's testimony.  However, in the

20   context of the specific testimony offered, the Court believes the probative value of Dr. Bernheim's

21   testimony outweighs any prejudicial effect it may have.  The Court denies this aspect of Defendants'

22   motion without prejudice to raising specific objections to specific questions at trial.

23          As to Defendants' second argument regarding Bernheim's "tip of the iceberg" statements, the

24   Court concludes that Dr. Bernheim's testimony is proper to the extent he makes clear, as he does in his

25   report, that he is not offering opinions regarding the complicity or liability of particular defendants.  The

26   Court denies this aspect of Defendants' motion without prejudice to raising specific objections to

27

28          [1] The cases cited by Defendants are distinguishable from the present matter in this regard.

3

specific questions at trial.

Lastly, the Court denies Defendants' challenges to Dr. Bernheim's testimony regarding "typical" cartel overcharges as they go to the weight rather than the admissibility of the testimony. Defendants take issue with the O'Connor study on which Dr. Bernheim relies and cite newer scholarship addressing the issue of cartel overcharges; Defendants may address such challenges, among others, through cross-examination.

Accordingly, Defendants' motions are DENIED. Docket Nos. 7844 and 7854.

### 3.    Defendants' motion to exclude testimony of Plaintiffs' expert David P. Stowell

Defendants seek to exclude all testimony of Plaintiffs' expert, David P. Stowell, who was retained to "provide an opinion as to whether the prices implied by the Bernheim Report . . . would have caused the Defendants to curtail investments in their production facilities . . . during the Conspiracy Period." *See* Docket No. 7847. Professor Stowell concluded that the LCD industry as a whole would not have been curtailed at the but-for prices estimated by Dr. Bernheim. Defendants assert numerous challenges to Dr. Stowell's testimony, including arguments that he relied on unreliable data, engaged in extensive cherry picking, and drew conclusions about all defendants based on data for one defendant, among others. Defendants also contend, *inter alia*, that Prof. Stowell's opinion on Asian industrial policy are not based on any discernible methodology.

With one exception, the Court finds that the challenges raised, including Prof. Stowell's apparent "about-face" in his NPV opinion, go to the weight, rather than the admissibility of the testimony, and Defendants may sufficiently address such issues through cross-examination. Thus, the motion is denied without prejudice to raising specific objections to specific questions at trial.[2]

The exception is as follows: The Court finds that the probative value of Prof. Stowell's opinion regarding government policies of certain Asian countries is outweighed by prejudice to Defendants.

---

[2]  With respect to the "G6" document produced by AUO that apparently contained fictional numbers, Plaintiffs have averred that Prof. Stowell will not rely on that document for his testimony at trial and the Court so orders. However, the Court disagrees with Defendants' argument that all of Prof. Stowell's testimony should be excluded because his "lack of diligence" in relying on this document renders his testimony inadmissible. The case law that Defendants cite concerns situations where experts relied at trial on data the Court found to be "unreliable and unverified." This is not such a situation.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  While Prof. Stowell, in his rebuttal report, identified three examples of potential sources of government

2  support (*see* Docket No. 7848-1, Exh. C at ¶¶ 116-118 - support for Chimei, Sanyo, and Sharp,

3  respectively), he was unable to provide any instance in which a Defendant company actually received

4  government support or explain how these three examples were representative of the rest of Defendant

5  companies.  Thus the probative value of these examples is minimal, and is substantially outweighed by

6  the potential for prejudicial speculation.  Accordingly, Prof. Stowell's testimony regarding government

7  support for the TFT-LCD industry is excluded.

8       Accordingly, Defendants' motion is GRANTED in part and DENIED in part.  Docket No. 7847.

9

10 **4.      Kodak's motion to exclude testimony of Defendants' expert George Foster**

11      Plaintiff Kodak seeks to exclude testimony from Defendants' expert Dr. George Foster relating

12 to pass-through analyses generally or to Kodak's expert's pass-through analyses.  Docket No. 7850.

13 Kodak argues that Dr. Foster failed to apply any scientific method in reaching his opinions, but rather,

14 offers generalizations he has not attempted to validate or test through the scientific method.  Kodak

15 points to two specific examples to demonstrate this point: (1) Dr. Foster's opinion that Kodak's expert,

16 Dr. Macartney, assumed an unrealistically short period (one month) between defendants' sale of LCD

17 components to OEMs and Kodak's purchase of digital cameras assembled by those OEMs when

18 calculating the Upstream Pass-Through analysis; and (2) Dr. Foster's opinion that Dr. Macartney

19 inconsistently excluded sales of digital still cameras ("DSC") to Kodak by affiliated OEMs from his

20 Upstream Pass-Through analysis when he did not exclude those same DSCs from his Downstream

21 analysis.

22      The Court concludes that Kodak's challenges go to the weight rather than the admissibility of

23 Dr. Foster's testimony.  Dr. Foster was retained to provide his expertise on the research design of Dr.

24 Macartney's pass-through analyses, not to provide an economic analysis of the pass-through damages.

25 He provided two opinions relating to Dr. Macartney's analyses, challenging Dr. Macartney's

26 assumptions and inconsistent treatment of certain transactions in analyzing pass-through damages.  The

27 Court finds that Kodak's challenges to Dr. Foster's opinions on these matters can be the subject of cross-

28 examination, but they do not render Dr. Foster's opinion unreliable.  To the extent Kodak believes Dr.

1   Foster's opinions may confuse the jury, Kodak will have an opportunity to address any such confusion

2   through cross-examination.  Accordingly, Kodak's motion is DENIED.  Docket No. 7850.

3

4   **5.      Defendants' motion to exclude Best Buy's expert Alan Frankel**

5          Defendants seek to exclude certain testimony of Plaintiff Best Buy's expert Dr. Alan Frankel,

6   who was retained to investigate, *inter alia*, "[t]he extent to which it appears changes in Best Buy's retail

7   pricing were made contemporaneously and uniformly in response to, and in the same amounts, as

8   changes in Best Buy's costs for LCD products."  Docket No. 7853; *see also* Docket No. 7855-1 at ¶ 92.

9   Defendants take issue with Dr. Frankel's extensive quoting of another expert, Dr. Stephen Hoch, who

10  Defendants had retained in the Indirect Purchaser Plaintiffs ("IPP") action and who Best Buy has

11  designated as a witness in this action.[3]  Because the parties settled in the IPP action, Dr. Hoch did not

12  testify, and Defendants argue that Dr. Frankel's testimony "parroting" Dr. Hoch's opinions should be

13  excluded, and that in no circumstance should Dr. Frankel be permitted to mention Dr. Hoch or his prior

14  retention by Defendants in the IPP action.

15         The Court concludes that the portion of Dr. Frankel's opinion discussing Dr. Hoch's findings,

16  paragraphs 93-98, may be presented at trial.  In his report, Dr. Frankel noted that "[t]here are a number

17  of reasons to expect significant variation in retail pricing and in the effect of cost differences on Best

18  Buy's retail prices."  Docket No. 7855-1 at ¶ 92.  He then cited and quoted from Dr. Hoch's report in

19  the IPP action to describe "attributes of the retail environment that . . . make pass-on of merchant costs

20  highly variable and unpredictable . . ." and to note Dr. Hoch's analysis that Best Buy was not insulated

21  from these retail pricing complexities.  *Id*. at ¶¶ 93 - 99.  However, Dr. Frankel did not merely rely on

22  Dr. Hoch's opinion, which experts may sometimes do, but conducted his own analysis using Best Buy

23  data to confirm what Dr. Hoch had opined; "that there is no mechanistic passthrough of cost changes

24  to price changes in a contemporaneous and uniform manner."  Having conducted his own, independent

25  analysis, Dr. Frankel did not merely "parrot" Dr. Hoch's opinion, as Defendants suggest.  Moreover,

26  Best Buy is not required to refrain from mentioning that Dr. Hoch was formerly retained by Defendants

27  _____

28          [3]In their motion, Defendants argue that Best Buy should not be permitted to call Mr. Hoch.  In
    its opposition, Best Buy agrees that it will not call Dr. Hoch as a witness.

United States District Court
For the Northern District of California

in a separate action.  The cases Defendants cite are distinguishable; Defendants retained Dr. Hoch as a testifying expert in the IPP litigation, not a consultive expert as involved in *Rubel v. Eli Lily and Co.*, 160 F.R.D. 458 (S.D.N.Y. 1995).  Dr. Hoch prepared a report, and Defendants proceeded as though he would be testifying at trial.  Because the parties ultimately settled, Defendants never called Dr. Hoch to trial; but they did not withdraw Dr. Hoch based on some issue with Dr. Hoch's testimony, as the Plaintiffs did in *Peterson v. Willie*, 81 F.3d 1033, 1037 (11th Cir. 1996).  Accordingly, Defendants' motion is DENIED.  Docket No. 7853.


   **IT IS SO ORDERED.**


 Dated: June 14, 2013

_____
SUSAN ILLSTON
United States District Judge

United States District Court
For the Northern District of California

7